UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61389-CIV-COHN/SELTZER

SUPER STOP #701, INC., a Florida corporation,
and MAHAMMAD A. QURESHI, an individual,

    Plaintiffs,

vs.

BP PRODUCTS NORTH AMERICA INC.,
a foreign corporation, NFH #2 ENTERPRISE, INC.,
a Florida corporation, and FIROZ A. SARKER, an individual,

    Defendants.
_____/

CASE NO. 08-61301-CIV-COHN/SELTZER

BP PRODUCTS NORTH AMERICA INC.,

    Plaintiff,

vs.

SUPER STOP #701, INC., a Florida corporation,
and MAHAMMAD A. QURESHI, an individual,

    Defendants.
_____/

**ORDER DENYING MOTION FOR JURY TRIAL**
**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Defendants Super Stop #701 and Mahammad Qureshi's Untimely Request for Jury Trial Pursuant to Rule 39(b) [DE 83 in Case No. 08-61301], Defendants Super Stop and Mahammad Qureshi's Motion to Strike [DE 88 in Case No. 08-61301], Defendants Super Stop and Mahammad Qureshi's Motion for Final Summary Judgment [DE 89 in Case No. 08-61301], BP Products' Motion for Default Judgment and/or Motion for Summary Judgment [DE 48 in Case No. 08-61389], BP Products' Cross-Motion for Summary Judgment [DE 100 in Case No. 08-61301 and DE 72 in Case No. 08-61389-CIV], and BP Products' Motion

to Strike the Affidavit of Mahammad Qureshi [DE 110 in Case No. 08-61301]. The Court has carefully considered the motions and related filings, and is otherwise fully advised in the premises. The Cross-Motion became ripe on November 16, 2009.

## I.   BACKGROUND

As discussed in this Court's prior omnibus order in this case, 2008 WL 4861532 (S.D.Fla. Nov. 10, 2008), this dispute arose from unpaid fuel delivery bills. Super Stop #701, Inc. ("Super Stop"), whose principal is Mahammad A. Qureshi ("Qureshi"), owns a gas station and entered into a Dealer Supply Agreement with BP Products North America, Inc. ("BP Products" or "BP") in 2006 ("Agreement"). This Agreement required BP to supply fuel to the gas station, which Super Stop leased to a separate company. The actual operator of the station was Defendants NFH #2 Enterprise, Inc. ("NFH") and Firoz A. Sarker ("Sarker"). Sarker had received Dealer training from BP and may or may not have been an approved Dealer for BP. Although Super Stop maintained a deposit with BP pursuant to the Agreement, BP received payment for fuel deliveries on a pay as you go basis for several years from accounts maintained by NFH and/or Sarker. BP maintains that it only had written agreements with Super Stop and was not in control of who paid for the fuel.

In June of 2008, BP continued to make deliveries to the station, operated at the time by Sarker, without fuel payments being made, before Super Stop became aware on July 9, 2008 of the large balance owed to BP (at least $500,000). On that date, pursuant to the Agreement and a Rider to the Dealer Supply Agreement ("Rider"), BP sought payment from Super Stop and Qureshi. By this time, Sarker had allegedly fled the country. On July 28, 2008, BP sent a letter to Super Stop terminating the

2

Agreement effective August 4, 2008. Super Stop filed an action in state court on August 8, 2008, which was later removed to this Court as Case No. 08-61389-CIV. BP filed its own action in federal court, Case No. 08-61301-CIV, on August 14, 2008, which included claims related to the Agreement, the Rider, a prior Promissory Note executed by Qureshi, and a Re-Image agreement between BP and Super Stop.

In particular, BP's amended complaint against Super Stop and Qureshi in Case No. 08-61301-Civ contains the following claims: breach of contract (franchise agreement), account stated, open account, breach of contract (re-image program), breach of contract (promissory note), conversion (of certain equipment), replevin (of that equipment), and breach of the personal guarantee ("Rider") signed by Qureshi.

Super Stop and Qureshi's Amended Complaint in Case No. 08-61389-Civ contains two claims for declaratory relief under the Petroleum Marketing Practices Act ("PMPA") against BP Products (Count I concerns release from liability and Count II concerns wrongful termination), one claim under the PMPA , and one claim for conversion of certain property.[1]

## II.  DISCUSSION

### A.  Motion for Jury Trial

Super Stop and Qureshi moved for the Court to consider their admittedly untimely request for a jury in this matter. The record is undisputed that a jury trial was not requested by any party in any of the pleadings in this case. Rather, Super Stop and Qureshi rely upon this Court's discretionary power contained in Rule 39(b) of the Federal Rules of Civil Procedure.

---

[1] The Amended Complaint also contains several claims against NFH and Sarker.

BP Products opposes the request, noting that the request was made on September 16, 2009, after the (initial) close of the discovery period, and one year after the case was originally filed. BP asserts that it will be prejudiced if it is now forced to prepare for a jury trial rather than a bench trial. BP Products also argues that the Promissory Note that is the basis for some of BP's claims in this action contains a clear waiver of any right to a jury trial. See Promissory Note at ¶ 13, Exhibit B to Amended Complaint [DE 46-2].

The Court concludes that Super Stop and Qureshi have waived any right to a jury trial, whether by failing to timely invoke the right during this litigation or by waiving such right in the promissory note that began the parties' business relationship. Therefore, these actions will be tried to the court.

### B.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### C. Personal Guarantee

The Court first turns to the cross motions for summary judgment with regard to whether the Rider contains a valid personal guaranty by Mohammed Qureshi. The relevant facts are that the Rider agreement defined "Dealer" as Super Stop #701 and "Dealer-Principal" as Mahammad Qureshi. The Rider agreement includes a provision that the "Dealer-Principal personally guarantees payment of the debts, if any, owed to BP by the Dealer incident to the Dealer's use of the facility in connection with the Supply Agreement and any dealings with BP relative thereto." Rider, ¶ 3, Exhibit B to Defendant's Motion for Summary Judgment [DE 89-2]. The Rider contains three separate signature blocks, one for BP, one for the "Dealer" and one for the "Dealer-

Principal."

Defendant Qureshi moves for summary judgment on BP's claim in Count VIII regarding the personal guaranty because the Dealer-Principal signature block is blank. Qureshi argues that the contract evidence is clear that Qureshi did not intend to be personally bound by the Rider. Qureshi further argues that the contract is ambiguous because of the blank signature block and parol evidence must be allowed. This extrinsic evidence consists of Qureshi's deposition testimony that he did not intend to be personally bound by the Rider and therefore did not execute the Dealer-Principal signature block.

BP opposes this motion and filed a cross motion asserting that Qureshi's signature as Dealer and the language of the Rider show all parties' intent for Qureshi to personally guarantee the debts of Super Stop. BP argues that Florida case law clearly states that a principal of a corporation cannot avoid personal liability for an agreement imposing personal liability by stating after the fact that he did not intend to be bound. Great Lakes Products, Inc. v. Wojciechowski, 878 So.2d 418, 419 (Fla. Dist. Ct. App. 2004); Laboratory Corp. of America v. McKown, 829 So.2d 311, 313 (Fla. Dist. Ct. App. 2002); Robert C. Malt & Co. v. Carpet World Distributors, Inc., 763 So.2d 508, 510 (Fla. Dist. Ct. App. 2000). Each of these cases stand for the proposition that if a document's clear purpose is to impose a personal guaranty, the signature of a corporate principal can personally bind that principal even if they add their corporate title to their signature.

Qureshi relies upon United Refrigeration, Inc. v. Evercool Air Conditioning, Inc., 593 So.2d 1192, 1193 (Fla. Dist. Ct. App. 1992), a case similar to the case at bar because the loan agreement at issue contained two signature lines, one for the

guarantor and one for the individual guarantor. The owner and president of Evercool, Burrell, only signed the loan as president of the corporation, and refused to sign in the space for the "individual guarantor." Id. The court held that the document was ambiguous but that there was substantial evidence that the parties understood that Burrell did not intend to be personally liable. United's credit manager testified that he was aware at the time of signing that Burrell would not incur individual liability because he did not sign the loan application above the line marked, "individually." Id.

BP argues that the record in this case, unlike in United Refrigeration, does not contain a contemporaneous objection by Qureshi regarding his being individually bound by the Rider, nor an acceptance by the creditor (BP) of such objection. Rather, BP relies upon the plain language of the Rider that: 1) the Dealer-Principal personally guarantees the debts of the Dealer; 2) Mahammad Qureshi is defined as the Dealer-Principal; and 3) Mahammad Qureshi signed the document -- though he only signed the document in the space provided for the "Dealer" as president of Super Stop.[2]

The Court concludes that summary judgment is not appropriate on BP's claim under the Rider for personal liability because the Rider as executed is ambiguous as to whether Qureshi intended to be personally bound. Unlike the cases relied upon by BP, the Rider is not solely a personal guarantee, but contains other substantive provisions. Thus, if it is determined that Qureshi's failure to sign means he is not personally bound, the Rider cannot simply be viewed as a superfluous document merely having a corporation guarantee its own debts. More importantly, the Rider contains two separate signature blocks, one for the Dealer and one for the Dealer-Principal, the

---

[2] The Court does not rely upon the late affidavit of Mahammad Qureshi and will grant BP's Motion to Strike without waiting for a response to this motion.

latter being left blank.  As Qureshi notes, BP did not have to continue the business relationship and accept the Rider without Qureshi's signature as Dealer-Principal.  BP could have refused to accept the unsigned Rider.

The Court concludes both sides' motions for summary judgment be denied on the claim regarding the personal liability of Qureshi as there are genuine issues of material fact regarding the parties' intent to personally bind Qureshi.

### D.  BP's Claims Against Super Stop

As to BP's claims against Super Stop, Super Stop argues that there are issues of disputed material fact regarding BP's acknowledgment and approval of Sarker as a tenant and operator of the station.  Super Stop also asserts that the doctrine of equitable estoppel prevents BP from now enforcing the agreements against Super Stop because BP had been accepting payments from Sarker, a BP-trained Dealer himself, from an electronic funds transfer account capable of paying BP directly.  Super Stop also argues against summary judgment on the account stated and open account claims because the accounts in question were Sarker's accounts, not Super Stop's accounts.  As to the conversion and replevin claims, Super Stop argues that it did not have a possessory interest in the signs and equipment at issue, in that Sarker leased the facility and had control over the equipment -- though Super Stop concedes the equipment is located at the station.

BP argues that it was Super Stop who installed Sarker as the lessee and operator of the station without BP's consent, and thus Super Stop remains liable under the written agreements between BP and Super Stop.  BP asserts that Super Stop has failed to put forth any admissible evidence that BP had any knowledge of Sarker's

operations at the site or any representation by BP that it knew of Sarker's operations. Rather, BP relies upon the written terms of the Dealer-Supply Agreement and Re-Image Contract and the lack of any documentation by Super Stop of BP's approval or knowledge that Sarker was in fact leasing and operating the station. As to the equitable estoppel argument, BP argues that because Super Stop cannot show any representation by BP that Sarker was the dealer of record, Super Stop cannot have reasonably relied upon any action by BP.

After a review of the record, the Court concludes that there are genuine issues of material fact regarding BP's knowledge of Sarker's operations and payments. It will be Super Stop's burden to prove an equitable estoppel defense, otherwise the valid written agreements between BP and Super Stop, the Dealer Supply Agreement, Promissory Note and Re-Image contract, will control the result.

## III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants Super Stop #701 and Mahammad Qureshi's Untimely Request for Jury Trial Pursuant to Rule 39(b) [DE 83 in Case No. 08-61301] is hereby **DENIED**;

2. Defendants Super Stop and Mahammad Qureshi's Motion to Strike [DE 88 in Case No. 08-61301] is hereby **GRANTED**, as their motion for summary judgment was refiled;

3. Defendants Super Stop and Mahammad Qureshi's Motion for Final Summary Judgment [DE 89 in Case No. 08-61301] is hereby **DENIED**;

4. BP Products' Motion for Default Judgment and/or Motion for Summary Judgment

9

[DE 48 in Case No. 08-61389] is hereby **DENIED** as moot;

5. BP Products' Cross-Motion for Summary Judgment [DE 100 in Case No. 08-61301 and DE 72 in Case No. 08-61389-CIV] is hereby **DENIED**;

6. BP Products' Motion to Strike the Affidavit of Mahammad Qureshi [DE 110 in Case No. 08-61301] is hereby **GRANTED**;

7. These cases are number one for trial to begin Monday, November 23, 2009, as no criminal cases remain on next week's trial docket;

8. Calendar Call remains set for Thursday, November 19, 2009 at 9:00am.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of November, 2009.

_____
JAMES I. COHN
United States District Judge

copies to:

Mark Blumstein, Esq.
Justin Leto, Esq.
Tracy Newmark, Esq.